# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

November 24, 2025

Lyle W. Cayce
Clerk

No. 24-30617

Emanuel Luzardo Bermudez,

*Plaintiff—Appellant*,

*versus*

DOJ Executive Office For Immigration Review,

*Defendant—Appellee*.

_____

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 1:22-CV-1032

_____

Before Southwick, Higginson, and Wilson, *Circuit Judges*.
Per Curiam:[*]

Emanuel Luzardo Bermudez appeals the district court's denial of his motion for attorney fees under the Freedom of Information Act (FOIA). He contends not that the district court misapplied this court's governing precedent in weighing his FOIA motion for fees, but that this court's precedent has been implicitly overruled by the Supreme Court, such that the district court should not have applied it at all. We disagree and affirm.

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 24-30617

## I.

In 2021, the Executive Office for Immigration Review (EOIR) initiated removal proceedings against Bermudez. During those proceedings, Bermudez filed a FOIA request for his Record of Proceedings (ROP). On June 17, 2021, EOIR sent Bermudez's counsel an email acknowledging receipt of the request and advising that, due to the COVID-19 pandemic and the complexity of the request, processing it might be delayed. Following that acknowledgement, no further correspondence was exchanged between the parties.

Behind the scenes, however, EOIR began assembling the documents constituting Bermudez's ROP. On August 13, 2021, an EOIR FOIA Center supervisor requested Bermudez's ROP from the New Orleans Immigration Court. When the file arrived at the EOIR FOIA Center, it was incomplete; to complete it, additional documents located at the Miami Immigration Court were needed. The EOIR FOIA Center requested those documents from the Miami Immigration Court on January 28, 2022.[1] Those documents arrived at the EOIR FOIA Center on June 21, 2022, nearly five months later and a year after EOIR's email to Bermudez's counsel acknowledging his information request.

In the meantime, having received neither records nor updates from the agency, Bermudez filed a FOIA suit against EOIR in April 2022.[2] Even then, EOIR did not respond to his lawsuit until Bermudez moved for summary judgment in June 2022. At that point, EOIR appeared, announced

---

[1] The EOIR affidavit says this occurred on January 28, 2021, but based on the sequence of events, that year appears to be a typo.

[2] Bermudez maintains he followed up with EOIR twice before filing his suit. EOIR counters that there are no records that he ever contacted the agency after their initial exchange.

it had gathered the requested records, and stated that the agency had turned them over to Bermudez without withholding any documents. The district judge subsequently denied his summary judgment motion as moot, resolving the underlying merits litigation.

Bermudez then moved for attorney fees under FOIA. *See* 5 U.S.C. § 552(a)(4)(E)(i). He asserted that because EOIR did not produce the ROP until after he filed his lawsuit, it was his lawsuit that caused EOIR to change its position on releasing the documents. Thus, he reasoned, he had "substantially prevailed" in the FOIA litigation, such that he was both eligible for, and entitled to, attorney fees. *See id.* § 552(a)(4)(E)(i) & (ii). The district court applied this circuit's *Batton* test for assessing requests for FOIA attorney fees, *Batton v. IRS*, 718 F.3d 522, 525 (5th Cir. 2013), and denied the motion. This appeal followed.

## II.

We review a district court's decision on whether to award attorney fees under FOIA for abuse of discretion. *Franklin v. United States*, 49 F.4th 429, 438 (5th Cir. 2022); *Batton*, 718 F.3d at 525. FOIA allows a plaintiff who has "substantially prevailed" in a FOIA action against the federal government to recover "reasonable attorney fees and other litigation costs." 5 U.S.C. § 552(a)(4)(E)(i). A plaintiff "substantially prevails" when he obtains information in a FOIA action through either "a judicial order, or an enforceable written agreement or consent decree," or "a voluntary or unilateral change in position by the agency." *Id.* § 552(a)(4)(E)(ii). In the Fifth Circuit, whether a plaintiff qualifies for a FOIA fee award is analyzed using our two-pronged *Batton* test, which first examines (1) fee eligibility, and then (2) fee entitlement. *Franklin*, 49 F.4th at 438 (citing *Batton*, 718 F.3d at 525).

The eligibility prong asks whether a plaintiff has substantially prevailed via either a court order or a "voluntary or unilateral change in position by the agency." *Batton*, 718 F.3d at 525 (quoting 5 U.S.C. § 552(a)(4)(E)(ii)(II)). If the latter, we apply the "catalyst theory" to assess whether the plaintiff substantially prevailed. *Id.* The catalyst theory requires the movant to show that "prosecution of the action could reasonably be regarded as necessary to obtain the information and that the action had a substantive causative effect on the delivery of the information." *Id.* (quoting *Lovell v. Alderete*, 630 F.2d 428, 432 (5th Cir. 1980)).

The entitlement prong asks whether a movant who shows he is eligible for a fee award should actually receive one. Courts look to four factors to determine fee entitlement: "(1) the benefit to the public deriving from the case; (2) the commercial benefit to the complainant; (3) the nature of the complainant's interest in the records sought; and (4) whether the government's withholding of the records had a reasonable basis in law." *Id.* at 527 (quoting *Texas v. ICC*, 935 F.2d 728, 730 (5th Cir. 1991)).

## III.

On appeal, Bermudez does not contend that the district court erroneously applied *Batton*. Instead, he asserts *Batton* should not have been applied at all, arguing that we should "overturn" it. Or, more specifically, that the Supreme Court already has done so, at least implicitly. Bermudez cites three recent Supreme Court cases he says compel this conclusion: *Lackey v. Stinnie*, 604 U.S. 192 (2025), *Food Marketing Institute v. Argus Leader Media* (*FMI*), 588 U.S. 427 (2019), and *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545 (2014). But none of these cases addresses *Batton*'s FOIA fee-award test, and none obliges us to depart from our precedent, which we must otherwise follow under this court's rule of orderliness.

**A.**

"It is a well-settled Fifth Circuit rule of orderliness that one panel of our court may not overturn another panel's decision, absent an intervening change in the law, such as by a statutory amendment, or the Supreme Court, or our *en banc* court." *Jacobs v. Nat'l Drug Intel. Ctr.*, 548 F.3d 375, 378 (5th Cir. 2008). "[E]ven if a panel's interpretation of the law appears flawed, the rule of orderliness prevents a subsequent panel from declaring it void." *Id.*; *see U.S. v. Traxler*, 764 F.3d 486, 489 (5th Cir. 2014).

We have "specifically rejected the idea that later Supreme Court and other decisions that were not directly on point could alter the binding nature of our prior precedent." *Traxler*, 764 F.3d at 489 (citing *Jacobs*, 548 F.3d at 378). "For a Supreme Court decision to override a Fifth Circuit case, the decision must unequivocally overrule prior precedent; mere illumination of a case is insufficient." *Gahagan v. U.S. Citizenship & Immigr. Servs.*, 911 F.3d 298, 302 (5th Cir. 2018) (alteration adopted) (quoting *United States v. Petras*, 879 F.3d 155, 164 (5th Cir. 2018)).

And the rule of orderliness applies "even when a party raises 'new arguments that were not presented to a prior panel.'" *United States v. Wilkerson*, 124 F.4th 361, 368 (5th Cir. 2024) (quoting *Mendez v. Poitevent*, 823 F.3d 326, 335 (5th Cir. 2016)). "[A]n earlier panel decision binds even if that panel's opinion does not explicitly address arguments presented to the later panel." *United States v. Berry*, 951 F.3d 632, 636 (5th Cir. 2020). "This rule is strict and rigidly applied." *In re Bonvillian Marine Serv., Inc.*, 19 F.4th 787, 792 (5th Cir. 2021).

**B.**

Mindful of our rule of orderliness, the argument that *FMI* and *Octane Fitness* overruled the *Batton* test cannot survive contact with *Franklin*, which applied that test well after the Supreme Court handed down those cases. *See*

*Franklin*, 49 F.4th at 438 (applying *Batton* three years after *FMI* and eight years after *Octane Fitness*). Thus, our court has at least tacitly rejected the notion that the Supreme Court has overridden *Batton* and has instead continued to employ its framework.

Relevant to this case, *Franklin* considered whether a plaintiff who had sued the United States and the IRS Commissioner under FOIA could recover attorney fees. *Id.* at 434. In deciding the question, both the district court and this court expressly applied the *Batton* test and determined that the plaintiff was eligible for attorney fees but not entitled to them. *Id.* at 438–39. By doing so, our court confirmed *Batton*'s test as controlling FOIA fee-award cases. *See id.* at 438. If nothing else, *Franklin*'s approach shows that *Batton* remains binding and controls the result in this case as well. *Id.*; *see Mendez*, 823 F.3d at 335.

Bermudez mostly ignores *Franklin*, arguing that his case is actually this court's first chance to address FOIA fee awards "in light of *FMI* and *Octane Fitness.*" That argument is unpersuasive. As noted, *Franklin* postdates *FMI* and *Octane Fitness*, *see* 49 F.4th at 438, and the fact that *Franklin* did not address the arguments Bermudez now raises does not undermine the fact that our court nonetheless applied *Batton* in materially similar circumstances. *See Berry*, 951 F.3d at 636 (earlier panel decisions are binding even if they do not address arguments raised before later panels). Nor is it remarkable that *Franklin* did not address *FMI* and *Octane Fitness*: Neither case addresses the FOIA statute at issue here.[3] In the end, Bermudez's assertions about *FMI* and *Octane Fitness* devolve to new arguments "that were not presented to [the *Franklin*] panel" but could have

---

[3] *Octane Fitness* is a Patent Act case. *See* 572 U.S. at 548 (discussing the Patent Act's authorization of attorney fees in patent litigation). *FMI* is a FOIA Exemption 4 case. *See* 588 U.S. at 433–34 (discussing Exemption 4's mandatory disclosure shield).

been.  *See Mendez*, 823 F.3d at 335.  And on the merits of Bermudez's position, neither *FMI* nor *Octane Fitness* forms a basis for us to disregard the *Franklin* panel's more recent approach and overturn *Batton*—neither case constitutes an intervening change in the law specific to FOIA attorney fee requests, and *Franklin* indicates that our precedent was left undisturbed.

Though *Lackey* was handed down after *Franklin* was decided, *Lackey* does not change this conclusion.  There, the Supreme Court discussed whether a class of Virgina drivers should be considered prevailing parties eligible for attorney fees under § 1988(b).  *See* 604 U.S. at 199–202.  Bermudez makes three arguments concerning *Lackey*:  First, that courts must respect the statutory text of fee-award provisions; second, that *Lackey* advises that fee-award holdings should "follow naturally" from prior Supreme Court precedent; and third, that the Supreme Court values "straightforward, bright-line rule[s]" for fee-award provisions.  But none of these arguments, whatever their merits, shows that *Lackey* supplanted the *Batton* test.  That result is unsurprising, because *Lackey*, just like *FMI* and *Octane Fitness*, addressed a different statute and a set of facts that bear no resemblance to the ones here.  Thus, *Lackey* also left *Batton* undisturbed, and the district court was correct to apply its fee-award test.

Bermudez thus fails to show that any Supreme Court case has "alter[ed] the binding nature of our prior precedent," *Traxler*, 764 F.3d at 489, or "unequivocally overrule[d] [our] prior precedent" concerning the award of FOIA attorney fees, *Gahagan*, 911 F.3d at 302 (quoting *Petras*, 879 F.3d at 164).  And our court's recent FOIA cases have continued to apply *Batton*'s test.  While Bermudez asserts that the test is inconsistent with Supreme Court precedent and generally unfair, he ultimately provides no convincing basis for this panel to overturn it, either under our rule of orderliness, or on the merits.  *Cf. Alejos-Perez v. Garland*, 93 F.4th 800, 808 (5th Cir. 2024) (holding that arguments that the realistic-probability test was

No. 24-30617

"inconsistent with Supreme Court precedent and generally unfair" were "foreclosed by the rule of orderliness").

\*      \*      \*

For the foregoing reasons, the judgment of the district court is

AFFIRMED.